

**PohlmanUSA®**
Court Reporting and Litigation Services

Joann Dyroff

February 24, 2023

Edward Wiegand, et al.

vs.

New York Life Insurance & Annuity Corporation, et al.

EXHIBIT A

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION


EDWARD WIEGAND and EUGENIA    )
SPRICH, TRUSTEES OF THE       )
HERBERT C. WIEGAND REVOCABLE  )
TRUST, individually and on    )
behalf of all other similarly )
situated,                     )
                              )
       Plaintiff,             )No. 4:22 CV 188 RWS
                              )
vs.                           )
                              )
NEW YORK LIFE INSURANCE &     )
ANNUITY CORPORATION, et al.,  )
                              )
       Defendants.            )
```

The deposition of JOANN DYROFF, taken before Mary M. Rocco, Certified Court Reporter and Registered Professional Reporter, taken pursuant to the provisions of the Missouri Code of Civil Procedure and the Rules of the Supreme Court thereof pertaining to the taking of depositions for the purpose of discovery, commencing at 12:00 p.m., on February 24th, 2023, at 165 North Meramec, Suite 110, St. Louis, Missouri 63105.

EXHIBIT A

```
 1   APPEARANCES:

 2   JACOBSON PRESS, P.C.
     BY:  JOSEPH JACOBSON, ESQUIRE
 3   222 South Central Avenue, Suite 550
     Clayton, Missouri 63105
 4   Phone:  314.899.9789
     E-mail:  jacobson@archcitylawyers.com
 5
          On behalf of the Plaintiffs;
 6


 7   PAULE, CAMAZINE & BLUMENTHAL, P.C.
     BY:  DAVID M. SLABY, ESQUIRE
 8   165 North Meramec Avenue, Suite 110
     St. Louis, Missouri 63105-3772
 9   Phone:  314.244.3650
     E-mail:  dslaby@pcblawfirm.com
10
          On behalf of Joann Dyroff;
11


12
     HINSHAW & CULBERTSON, LLP
13   BY:  JAMES M. BRODZIK, ESQUIRE
     521 West Main Street, Suite 300
14   Belleville, Illinois 62220
     Phone:  618.277.2400
15   E-mail:  jbrodzik@hinshawlaw.com

16        On behalf of Defendants.

17

18                  * * * * *

19

20

21

22

23

24

25
```

EXHIBIT A

```
 1                        I N D E X

 2
     WITNESS                                           PAGE
 3
     JOANN DYROFF
 4       Examination by Mr. Brodzik                       4
         Examination by Mr. Jacobson                     79
 5       Examination by Mr. Brodzik                      85

 6
                        E X H I B I T S
 7
     EXHIBIT                                           PAGE
 8
     Exhibit A     Petition                                5
 9   Exhibit B     Subpoena                               17
     Exhibit C     Privilege Log                          18
10   Exhibit D     DRYOFF00149 to DRYOFF00192             23
     Exhibit E     DRYOFF00199 to DRYOFF00228             25
11   Exhibit F     DRYOFF00066 to DRYOFF00074             28
     Exhibit G     DRYOFF00898                            35
12   Exhibit H     DRYOFF00198                            37
     Exhibit I     DRYOFF00920 to DRYOFF00921             38
13   Exhibit J     DRYOFF00098 to DRYOFF00117             46
     Exhibit K     DRYOFF00799 to DRYOFF00812             50
14   Exhibit L     DRYOFF00556                            53
     Exhibit M     DRYOFF00502 to DRYOFF00504             54
15   Exhibit N     DRYOFF00121 to DRYOFF00147             58
     Exhibit O     DRYOFF00092 to DRYOFF00095             59
16   Exhibit P     DRYOFF00083 to DRYOFF00084             64
     Exhibit Q     DRYOFF00271                            67
17

18                   CERTIFIED QUESTIONS

19   PAGE      LINE                      PAGE       LINE

20   19        17                        20           5
     33        12                        33          19
21   35        10                        35          16
     61        25                        62           5
22   63        13                        63          18
     71         8                        71          16
23   75        23                        76          15

24
                            - - -
25
```

PohlmanUSA Court Reporting
(877) 421-0099    PohlmanUSA.com

EXHIBIT A

```
1        A.    Yes.
2        Q.    So the background of this suit, or
3   the allegations in the pending petition, all
4   essentially resolve around a life insurance policy
5   that was taken out by Dr. Wiegand on his then
6   wife, Jean Cameron Wiegand's life.  Are you
7   familiar with that policy?
8        A.    Somewhat.
9        Q.    For the record, it is called a
10  Universal Life Accumulator Policy, Number
11  62791665.  Have you ever read this policy?
12       A.    I have read parts of it.
13       Q.    What parts of the policy do you
14  recall having read?
15       A.    Primarily, the first several pages
16  of the policy.
17       Q.    Is there a reason why you would read
18  the first several pages of the policy and not the
19  entirety of it?
20       A.    As I recall, the policy was -- it's
21  a very substantial number of pages.  It's not a
22  short document, and you know --
23       Q.    So you didn't feel like it was
24  necessary to read the entirety of it, or --
25       A.    My conversations with the clients
```

```
 1   about my involvement with this policy are
 2   privileged.  And this is starting to touch on
 3   that, so I can't go any further.
 4             MR. BRODZIK:  Can you certify that
 5   question, please?
 6             (Whereupon, the pending question is
 7   certified at the request of Mr. Brodzik.)
 8   BY MR. BRODZIK:
 9        Q.    Did you assist in procuring this
10   policy?
11        A.    No.
12        Q.    Do you know who procured the policy?
13        A.    There was -- I believe it was an
14   insurance broker that the Wiegands worked with.  I
15   can't recall the name of the company.  And I think
16   it's defunct.  I'm fairly sure it's defunct,
17   because I understood that the broker had died
18   somewhere along the line.
19        Q.    Understood.  Are you familiar with
20   life accumulator life insurance policies?
21        A.    Not enough to talk about them.
22        Q.    So you don't know the difference
23   between -- or you can't describe the difference
24   between a life accumulator policy and a standard
25   term life insurance policy?
```

1  policies that had a death benefit and a
2  diminishing cash value but for the inclusion of an
3  additional premium?
4       **A.    Yes.**
5       Q.    Okay.  And you've provided legal
6  guidance in regards to the handling and
7  maintenance of these types of policies?
8       **A.    On a very limited basis.**
9       Q.    Okay.  And what basis would that be?
10      **A.    To consult with their insurance**
11 **agent primarily.**
12      Q.    Do you recall if you ever provided
13 this accumulative life insurance illustration
14 document to Edward or Eugenia?
15      **A.    I believe that that calls for**
16 **confidentiality issues in terms of my discussions**
17 **with them.**
18           MR. BRODZIK:  I'll certify that
19 question.
20           (Whereupon, the pending question is
21 certified at the request of Mr. Brodzik.)
22 BY MR. BRODZIK:
23      Q.    In your history of dealing with
24 accumulator policies with diminishing cash values,
25 has it been your recommendation in the past to

```
 1   can't proceed.
 2   BY MR. BRODZIK:
 3       Q.    So you have no opinion on when a
 4   cash value should be exercised or when a client
 5   should wait for a death benefit?
 6       A.    If I'm dealing with a client on that
 7   question, as I said, I would refer them back to
 8   their insurance agent or to someone in our office
 9   to help review.
10       Q.    Do you recall ever directing Edward
11   or Eugenia to speak with their insurance agent
12   about this policy?
13       A.    I believe that is covered by
14   confidentiality.
15             MR. BRODZIK:  I would like to
16   certify that question as well.
17             (Whereupon, the pending question is
18   certified at the request of Mr. Brodzik.)
19             (Whereupon, Exhibit G is marked for
20   identification.)
21   BY MR. BRODZIK:
22       Q.    This is a letter, dated October 23,
23   2002, to McCarter and Greenley, signed by Edward
24   and Eugenia Sprich, apparently requesting that
25   their representation be -- or McCarter and
```

1     Q.    What do those words mean in English?

2     **A.**    **That it is not going to lapse in**

3 **that period of time or until that date?**

4     Q.    Or until that date?

5     **A.**    **Yes.**

6     Q.    And that date is only a year and

7 change out from the date that you sent that

8 letter; correct?

9     **A.**    **It appears.**

10    Q.    So would it be in your normal course

11 of business, if you see a policy that has the

12 potential to lapse in a year, that you would

13 inform your clients of that fact?

14          MR. SLABY: Object to form. No

15 foundation. Calls for a conclusion.

16          THE WITNESS: Could you ask that

17 question again?

18          MR. BRODZIK: Could you read it

19 back, please?

20          (Whereupon, the pending question is

21 read by the court reporter.)

22          MR. SLABY: Same objections.

23          THE WITNESS: Yes, generally.

24 BY MR. BRODZIK:

25    Q.    Do you recall if you did that in

```
 1   this instance?
 2        A.   I believe that is covered under
 3   confidentiality.
 4             MR. BRODZIK:  Can you certify that
 5   question, please?
 6             (Whereupon, the pending question is
 7   certified at the request of Mr. Brodzik.)
 8   BY MR. BRODZIK:
 9        Q.   In the pages that you sent back to
10   the insurance agent, is it true that it states
11   that the policy requires a monthly premium of
12   $7,818.50?
13        A.   I'm sorry, I don't have that in
14   front of me.
15             MR. JACOBSON:  I was looking it
16   over --
17             MR. SLABY:  The document speaks for
18   itself.  If you're just asking her to confirm what
19   it says on it, that's fine.
20             THE WITNESS:  It says somewhere in
21   here.
22             MR. SLABY:  Where is it?  Don't
23   assume anything.
24             THE WITNESS:  I assume it says what
25   you --
```

```
 1              MR. SLABY:  What are you asking,
 2   Jim?  I'm sorry.
 3   BY MR. BRODZIK:
 4        Q.    Well, you can look through the
 5   dates.  What is the required monthly premium as
 6   stated on the policy pages that you forwarded to
 7   Vance Financial Group?
 8              MR. SLABY:  Calls for a conclusion.
 9   Lack of foundation.
10              THE WITNESS:  Yes, it says premium
11   levels $7,000 and some change.
12   BY MR. BRODZIK:
13        Q.    Do you ever recall discussing that
14   fact with Edward and Eugenia?
15        A.    I believe that is covered by
16   confidentiality.
17              MR. BRODZIK:  Certify that question
18   as well, please.
19              (Whereupon, the pending question is
20   certified at the request of Mr. Brodzik.)
21   BY MR. BRODZIK:
22        Q.    Do you recall if the Trust -- strike
23   that.  If payments are being made for, say, life
24   insurance or fees on a brokerage account, whatever
25   it may be, are those fees being paid by the Trust
```

1          **A.      Let me change -- I don't know.  I**
2     **can't remember.**
3          Q.      If you would have, would that have
4     been noted in your legal file?
5                  MR. SLABY:  Object to form.
6                  THE WITNESS:  I don't know.
7     BY MR. BRODZIK:
8          Q.      Did you inform Edward and Eugenia
9     that the last correspondence you received from New
10    York Life in regards to the change in ownership
11    listed 9 Huntleigh Woods as the address for the
12    Trust?
13         **A.      I believe that would fall under**
14    **confidentiality in terms of what I informed them.**
15                 MR. BRODZIK:  Certify that question,
16    please.
17                 (Whereupon, the pending question is
18    certified at the request of Mr. Brodzik.)
19    BY MR. BRODZIK:
20         Q.      Did you ever make another attempt to
21    correct 165 North Meramce Avenue as your intended
22    address for the Trust?
23         **A.      I don't recall.**
24         Q.      Do you know when this insurance
25    policy lapsed?

1 discussions that you've had with them.  I'm asking
2 you as an attorney of 45 years, who handles
3 estates and trusts, do you have a legal duty to
4 keep your clients informed as to the pertinent
5 provisions of life insurance policies?
6          MR. SLABY:  Object to form.  Lack of
7 foundation, vague and ambiguous, calls for a legal
8 conclusion.
9          THE WITNESS:  Does that mean I don't
10 answer?
11          MR. SLABY:  If you have an answer,
12 you can have answer.  I'm not telling you not to.
13 Do you understand the question?
14          THE WITNESS:  I believe that in any
15 given case, that may be governed by discussions
16 between the attorney and the client.  And in this
17 case, I believe that is covered by
18 confidentiality.
19 BY MR. BRODZIK:
20      Q.    I'm not asking you specifically
21 about this case.
22      **A.    I understand that.**
23      Q.    I'm asking you, generally speaking,
24 with your 45 years of experience, whether or not
25 the representative for the Trustees of the Trust,

```
 1   counsel for the Trustees of the Trust has a duty
 2   to inform the Trustees of the pertinent
 3   information in life insurance policies that are
 4   included in the Trust?
 5           MR. SLABY:  Same objection as
 6   previously made.  There has been no established
 7   duty.  Lack of foundation, calls for a legal
 8   conclusion, vague and ambiguous.
 9           THE WITNESS:  I believe that, based
10   upon the objections raised by my attorney, that it
11   is not appropriate to answer that question.
12           MR. BRODZIK:  Why don't you certify
13   that question as well.
14           (Whereupon, the pending question is
15   certified at the request of Mr. Brodzik.)
16   BY MR. BRODZIK:
17      Q.   Have you ever spoken with Mark
18   Wiegand?
19      A.   I don't recall.
20      Q.   Have you spoken to Teal Wiegand?
21      A.   Who?
22      Q.   Teal Wiegand?
23      A.   I don't recall.
24      Q.   Had you ever spoken to Christina
25   Wiegand?
```