IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
Eastern Division

| | | |
|---|---|---|
| EDWARD WIEGAND, *et al.*, *etc.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:22-cv-00188 HEA |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| NEW YORK LIFE INSURANCE | ) | |
| & ANNUITY CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUBSTITUTE BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants' motion for summary judgment should be denied.

**I.    NY Life's statement of uncontroverted material facts does not
support its motion for summary judgment because it includes
facts that are not material, "facts" not supported by the
evidence cited, and "facts" contradicted by the record; the
statement also fails to include facts supporting its arguments.**

Many of the facts asserted by NY Life are *not material* to any cause

of action or defense in this case. A fact is *material* for summary judgment

if, under the governing law, it might affect the outcome of the case. *Ander-*

*son v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Partridge v. City of*

*Benton*, 70 F.4th 489, 492 (8th Cir. 2023) (fact is material if "outcome

determinative under prevailing law"). As one runs through the statements

1

of fact asserted by NY Life, it is difficult to see how many of them relate to any of the elements of a cause of action alleged by Trustee.

Depositions and exhibits cited by NY Life *do not support* purported facts for which they are cited. If the record presented by the moving party does not support a "fact" on which that party relies, the unsupported fact cannot be a basis for summary judgment. *Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 872 (8th Cir. 2006) (when "record does not support a finding," court cannot rely on the finding; summary judgment reversed).

Perhaps most egregiously, the statement ignores record evidence contrary to the purported facts NY Life asserts. Since the standard on a motion for summary judgment is that the moving party is representing to the Court that "there is no genuine issue as to any material fact," *Gibson v. American Greetings Corp.*, 670 F.3d 844, 852 (8th Cir. 2012), a movant who asserts as "uncontested" facts contradicted by record evidence violates Rule 56. One cannot create an absence of a genuine issue of material fact by closing one's eyes to the factual disputes that exist.

All three problems exist here as shown in Trustees' *Response to Defendants' Statement of Purportedly Uncontroverted Material Facts* ("Facts Response"). These three problems together form a sufficient basis

to deny NY Life summary judgment because they demonstrate that NY Life failed to show there is no genuine issue of a material fact. A party moving for summary judgment cannot meet its initial burden in bringing the motion if it relies on facts that are not material and leaves out evidence showing that material facts are genuinely disputed.

NY Life also failed to include in its statement facts supporting its damages argument. While the Court is not limited in ruling on the motion to evidence set out in the statement of facts, *see* Rule 56(c)(3), NY Life's filing of a brief relying on "facts" not appearing in its statement is not consistent with the intent of Rule 56. It also violates Local Rule 4.01(E), which states: "The Statement of Uncontroverted Material Facts **must set forth each relevant fact** in a separately numbered paragraph stating how each fact is established by the record, with appropriate supporting citation(s)" (emphasis added). Adding new facts in support of the motion in the argument section of the brief violate this Local Rule.

NY Life's motion lacks the factual foundation of a proper motion for summary judgment. This defect should be sufficient in itself to deny the motion for summary judgment. The motion should also be denied because NY Life fails to show it is entitled to judgment as a matter of law.

3

## II.   NY Life fails to show a right to summary judgment on breach of contract because it does not show Trustees did not perform their contractual obligations.

NY Life correctly states the four elements for breach of contract under Missouri law. NY Life admits two of the elements. It does not dispute there was a contract. ***NY Life does not dispute it breached the contract***. NY Life contends only that Trustees "cannot establish their own performance or damages." *NY Life Brief* at 7.

This section addresses whether "plaintiff performed or tendered performance pursuant to the contract." Responding to the argument is straightforward because NY Life does not state what contractual duty — that is, what duty "pursuant to the contract" — Trustees supposedly did not perform. NY Life thus fails to bear its "initial responsibility of informing the district court of the basis for its motion." *See NY Life Brief* at 7, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

This by itself is a sufficient basis to deny summary judgment.

NY Life's argument mentions three sections of the Policy — Sections 1.1, 5.3, and 8.15 — perhaps implying that one or more of those sections are the ones not performed by Trustees. *NY Life Brief* at 8. Reading the sections establish, however, that this cannot be the case. Section 1.1 states

4

*NY Life's obligation* to pay death benefits. Section 5.3 states *Trustee's right* to surrender the Policy to receive the cash surrender value. Section 8.15 states *NY Life's obligation* to provide Trustee with annual written report. Although NY Life says Section 8.15 sets, "The terms for communication between New York Life and the policyowners," *NY Life Brief* at 8, it does not oblige Trustees to communicate anything to NY Life. ***Since none of the three sections states an obligation of Trustees, Trustees could not have failed to perform their obligations under any of the three sections mentioned by NY Life***.

NY Life moves beyond the Policy and suggests that Trustees had an extra-contractual duty implied by law to communicate with NY Life. NY Life contends Trustees had an ongoing duty to alert NY Life that it had not updated the Policy mailing address.

To conjure up this extra-contractual duty, NY Life points to leters from the Trustees' attorney Dyroff, complaining that the change of address form she submitted only stated the *new* address to which mail was to be sent, and not the old address, and complaining that Dyroff's cover letter to the Form only talked about the change in Policy ownership and the need for a copy of the Policy, and did not repeat the form's request for an

address change. *NY Life Brief* at 8-9. But there is no dispute the address form Dyroff used was NY Life's form or that NY Life viewed the address change submission to be "in good order." By "in good order," NY Life meant that the form had all of the information necessary for NY Life to process the address change. *Facts Response* at ¶ 31. For NY Life to now contend that the address change submission was deficient is dishonest.

Indeed, almost 20 years after the address change form was submitted, when Trustee Sprich contacted NY Life for information about the Policy, the NY Life representative assisting her, Lakisha Dillard, found the address change request in the file. Indeed, in her capacity as an NY Life employee, Dillard wrote to Sprich admitting that NY Life had failed to make the address change because of an oversight by NY Life:

> On January 21, 2004 we received a request signed by Edward Wiegand and Eugenia Sprich as Co-Trustees to change the address to 165 N. Meramce Avenue, 6th Floor, St. Louis, MO 63105. **Due to an oversight on our part, the address change was not processed as requested**. We apologize for this error.

*Facts Response* at ¶ 31 quoting Exhibit 17 at 1 (emphasis added).

*NY Life through Dillard apologized for its mistake, but now NY Life blames Trustees for it.*

NY Life puts a great deal of weight on a June 23, 2004 NY Life letter acknowledging the changes of owner and beneficiaries that had been (repeatedly) requested by Trustees through their attorney Dyroff. NY Life contends that the letter put Trustees on notice NY Life was still using the 9 Huntleigh Woods address for the Policy. *NY Life Brief* at 9; *Exhibit 9.* There is no evidence, however, that Trustees ever saw the June 23, 2004 letter. There is no evidence about whether Dyroff had further communications with NY Life after the letter. *Facts Response* at ¶ 21.

However, even if Dyroff had no further communications, and even if the Trustees had seen the June 23, 2004 letter, one cannot say that as a matter of law any reasonable person who saw the letter would understand that NY Life had not updated the Trust's mailing address or that they as Policy owner would not be getting future communications from NY Life by mail. *For one thing, Trustees' lawyer received the letter even though addressed to Huntleigh Woods*. For another, NY Life had taken an inordinate amount of time to process earlier changes request, such as the change in ownership of the Policy. Who can say it would have been unreasonable as a matter of law to believe NY Life would eventually complete its processing of the address change after another long delay?

7

NY Life cites two cases it contends gave Trustees a duty to reach out and tell NY Life it was using the wrong address for the Policy. The first is *Doran, Inc. v. James A. Green, Jr. & Co.*, 654 S.W.2d 106 (Mo. App. 1983). NY Life cites *Doran* for the principle that, "When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings, and misleads another, then his silence may be deemed to be acquiescence." *NY Life Brief* at 9, citing *Doran, id.* at 109.

In *Doran*, and in the New York case it quotes, purported new contract terms were added by a party on the reverse of an invoice sent to the other party. The question was whether the party receiving an invoice with purported new terms was under some duty to contact the invoicing party to object to the additional terms or else be bound by them. *Both courts held that the party receiving the invoice had no duty to speak, and that it was not misleading to remain silent*. In other words, the holding in *Doran* is *the exact opposite* of the result NY Life requests here.

Importantly, the rule in *Doran* begins "when a party is under a duty to speak." NY Life, however, never shows Trustees were under a duty to speak — it never suggests a source for a duty requiring Trustees to tell NY Life that the June 23, 2004 letter had the wrong address on it.

8

The second case relied on by NY Life is an unreported district court decision by Judge John Ross, *C.F.C.S. Invs., LP v. Transamerica Occidental Life Ins. Co.*, No. 4:16-CV-00396 JAR, 2018 U.S. Dist. LEXIS 137657 (E.D. Mo. Aug. 15, 2018). The case is inapposite. It states the rule that "an insurer is estopped from asserting a policy lapse for non-payment only when the insured fails to receive a premium due notice through no fault of his own." *Id.* at *16.

> [T]he insurer must continue to send notices to the address it has on file for the insured **unless it is notified that the insured has changed address**. However, the fact that the insured has changed his or her address does not affect the sufficiency of the notification, **where the change is unknown to the insurer**.

*Id.* (emphasis added). ***Here, Trustees notified NY Life that the Policy address had changed***. NY Life received the address change form, determined the form was "in good order," containing all information needed to implement the address change. ***The change was known to NY Life***. NY Life failed to implement the change only because of its own "oversight."

There is nothing in *C.F.C.S.* suggesting that someone who has notified an insurer of an address change has a continuing duty to monitor the insurer until it completes processing the change. A major insurer like NY

9

Life should be able to handle the routine administrative task of making a Policy address change without handholding by its customer.

The evidence raises genuine issues about whether Trustees even knew that NY Life had not processed the address change. The record shows Trustees did not have a copy of the Policy, did not know the Policy's terms, did not know the Policy provided for annual notices to be mailed to them, and thus had no reason to be concerned when they did not receive annual notices. *Facts Response* at ¶¶ 4, 5, 11, 12, 15, 25–27, 49, 53.

The record suggests that when Dr. Wiegand purchased the Policy, NY Life's agent Clinton Vance told him the Policy was a single-premium policy, meaning no further payments would be needed. This is a reasonable inference because that is what Vance told Trustees when he disclosed the Policy to them the day of Dr. Wiegand's funeral. The inference is also supported by the consistent statements made to Trustees by McCarter. McCarter was Dr. Wiegand's estate lawyer who helped him purchase many NY Life policies. McCarter described the Policy in similar terms to Vance. It is reasonable to believe that McCarter also got his information about the Policy from Vance. *Facts Response* at ¶¶ 3, 4, 25, 26, 54, 55.

10

While NY Life may seek to argue at trial that the jury should find Trustees at fault for failing to continue to send address change notices to NY Life until NY Life finally changed the address on the policy, it is not reasonable to say that Trustees needed to do so *as a matter of law*, given that NY Life told them through its agent that Dr. Wiegand "has paid all the premiums and all the taxes on it. **All you have to do is sit back and wait** for [Jean Walters] to die." *Facts Response* at ¶ 4 (emphasis added).[1]

NY Life's contention that Trustees' breach of contract claim fails because they did not perform their obligations under the Policy should be rejected because NY Life does not identify any duty under the Policy that Trustees did not perform, and because its attempt to claim that Trustees had a non-contractual duty to ensure that NY Life completed the address change is not supported by the cases NY Life cites.

## III.  Trustees have established non-speculative damages.

NY Life's arguments about damages are also without merit.

---

[1]     Such an argument should not be allowed because a plaintiff's contributory fault or comparative fault is not a defense in a breach of contract action under Missouri law. A breach of contract plaintiff's alleged negligence may be admitted only for mitigation of damages. *A.G. Edwards & Sons v. Drew*, 978 S.W.2d 386, 391 (Mo. App. 1998). NY Life offers no theory by which a follow up by Trustees would have mitigated damages.

NY Life contends Trustees might have decided to keep the Policy, hoping Jean Walters would die before the Policy expired. NY Life contends damages are speculative because Trustees are picking the highwater mark of the Policy's cash value as the date of breach and damages.

Both assertions are contrary to the evidence. Trustees testified that if NY Life's agent had not lied to them, telling them that the Policy was a single-premium life insurance policy, and if NY Life had provided them with the annual notices — a contractual duty, which NY Life breached because of its own "oversight" — Trustees would have learned the Policy had a cash value, that the cash value could be received by surrendering the Policy, that by June 2009 the cash value was decreasing every month, and that the Policy could expire by 2014. *Facts Response* at ¶¶ 3–5, 15, 25–28, 31, 34, 49–52. Trustees knew the insured, Jean Walters, had an active social life and was still going to lots of fancy dinner parties in her 90s. *Id.* at ¶ 10. Trustees did not want their receipt of their legacy from their father's estate to be conditioned on his wife's death. *Id.* at ¶ 52. Indeed, Trustee Wiegand had told his father that running his estate through life insurance was a bad idea. *Id.* at ¶ 48. Trustee Wiegand is risk adverse; he was against prolonging the estate through life insurance,

12

preferring a "bird in the hand" to two in the bush, and viewed the Policy as a "ludicrous" crap shot. *Exhibit B* at 159-162.

**The record evidence is clear, not speculative, that Trustees would have surrendered the Policy early if they knew they could**. NY Life caused them not to know through its agent's lies and its breach of contract. *Facts Response* at ¶¶ 48-52. The valuation date of June 2012 is not arbitrary or speculative. It is not the highwater mark of value.[2] It is the date of the earliest breach within the 10-year statute of limitations. *Trustees would have surrendered the Policy by June 2009*, when the value was higher and had begun to decline, *but cannot claim that date because it is outside the statute of limitations*. Using the June 2012 breach date, the damages calculation is simple arithmetic, not speculative.

## IV. Trustees have a good claim for vexatious damages.

NY Life dismisses Trustees' evidence as "self-serving speculation." *NY Life Brief* at 10. All testimony by a party is "self-serving"; it is only to

---

[2]     The cash value in June 2012 was $809,022.60, down from $850,612.89 in June 2011, $870,983.90 in June 2010, and $877,922.12 in June 2009. *Exhibit 18* at 43, 49, 55, and 61. The cash surrender values in 2010 and 2009 were reduced to $864,746.40 and $865,447.12, respectively, because of surrender charges. *Id.* at 43, 49.

be discounted "where it clearly contradicts the plaintiff's earlier testimony under oath and where the plaintiff offers no explanation for the inconsistencies." *Stewart v. Rise, Inc.*, 791 F.3d 849, 861 (8th Cir. 2015). Trustees have no prior testimony to contradict. Absence a contradiction, the credibility of Trustees' testimony is left to the fact finder. *U.S. v. Nelson*, 51 F.4th 813, 818 (8th Cir. 2022).

NY Life argues that because Trustees did not accept its low settlement offer, there was no vexatious refusal to pay. *NY Life Brief* at 14. That is not the law. To establish vexatious refusal, Trustees only have to show that NY Life refused to pay "without reasonable cause or excuse." *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006). The evidence shows NY Life admitted its failure to give annual notices — *i.e.*, its breach of the Policy — but refused to accept responsibility for the results of its breach. There was no open question of fact to be decided before NY Life could know whether it had to pay, and NY Life has not identified any open question. Saying that the Trustee's decision to surrender the Policy requires "a multi-faceted analysis" of Policy term and the Jean Walters' health, *NY Life Brief* at 11, does not identify a fact question to be resolved before knowing whether payment was due under the Policy.

14

NY Life criticize Trustees and their attorney Dyroff for not reading and understanding the Policy. *NY Life Brief* at 11. This criticism ignores the record evidence showing why this was NY Life's fault. And Dyroff's standard advice to clients trying to understand whether to surrender a policy for its cash value is for them to ask their insurance agent — who in this case lied to the Trustees. *Facts Response* at ¶¶ 4, 5, 12, 47, 49–52.

NY Life argues it did not refuse to pay under the Policy because Trustee Sprich's November 19, 2020 letter did not demand payment. *NY Life Brief* at 14. But Trustees' lawyer's December 10, 2021 letter demanded payment of the Policy cash value as of June 2012. *Complaint at Exhibit 4*. Once again, NY Life ignores inconvenient evidence.

An insurer's refusal to pay can be found to be unreasonable and vexatious based on the facts and circumstances of the situation as a whole. *Dhyne*, 188 S.W.3d at 458. NY Life never stated a ground for refusing to pay in response to the lawyer's demand letter. Failure to state a ground for refusal to pay at the time of refusal is "substantial evidence of a vexatious and recalcitrant" altitude sufficient to support a claim of vexatious refusal. *Hensley v. Shelter Mut. Ins. Co.*, 210 S.W.3d 455, 467-68 (Mo. App. 2007).

Summary judgment on vexatious refusal should be denied.

Respectfully submitted,

Jacobson Press P.C.

By:    /s/ Joe D. Jacobson
        Joe D. Jacobson #33715
        222 South Central Avenue, Suite 550
        Clayton, MO 63105
        Tel: (314) 899-9789
        Direct: (314) 899-9790
        Fax: (314) 899-0282
        Email: Jacobson@ArchCityLawyers.com

        Attorneys for plaintiffs Edward
        Wiegand and Eugenia Sprich

## CERTIFICATE OF SERVICE

The filing attorney certifies that copies of this document and the three attached exhibits were served on each counsel of record participating in the court's electronic case filing (ECF) system by filing this document through the ECF system on August 6, 2023.

16