UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD WIEGAND, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 4:22CV188 HEA ) |
| NEW YORK LIFE INSURANCE & ANNUITY CORPORATION and NEW YORK INSURANCE COMPANY | ) ) ) ) |
| Defendants. | ) ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, [Doc. No. 54]. Plaintiffs oppose the motion. For the reasons set forth below, the Motion will be denied.

**Facts and Background**

In 1999, Dr. Herbert Wiegand ("Wiegand") and Jean Walters ("Walters") married. Wiegand and Walters had multiple children from prior marriages but had no children together.

On June 13, 2000, Wiegand purchased an accumulator universal life insurance policy ("the Policy") from New York Life against the life of Walters with a face value of $1.4 million and a maturity date of June 12, 2020.

Wiegand funded the Policy with a single, up-front premium payment of $750,000. The up-front premium was guaranteed to last at least five years, with the potential to last longer if the interest the Policy earned exceeded the remaining cash value.

If the premium expired prior to the maturity date, the policy holders had the option to pay additional premiums or surrender the policy in exchange for a cash disbursement equal to the present "cash surrender.

Every month, the cash value of the policy fluctuated based on prevailing interest rates earned by the premium payment, less the ongoing cost to maintain the policy. Coverage under the Policy continued as long as the cash value of the policy exceeded the monthly cost to maintain the policy.

Following Wiegand's death on July 16, 2002, Plaintiffs last interacted with Walters "within a few days of [their] father's funeral;" they did not see or speak with her again for the remaining eighteen years of her life, did not attend her funeral, and had no contact with her surviving family.

As Trustees of Wiegand's trust, Plaintiffs' only subsequent discussions regarding the Policy after Wiegand's death involved "how long is [Walters] going to live before we get a payout from this policy" and the need to "just sit back and wait."

On July 22, 2003 – approximately a year after Wiegand's death, Plaintiffs engaged attorney Joann Dyroff to notify Defendants in writing that they wished to

transfer ownership of the Policy from the Wiegand Family LLC to the Trust and modify the Policy beneficiaries. On July 22, 2003, Trustees' lawyer Joann Dyroff sent a letter to NY Life's agents at the Vance Financial Group with instructions to transfer ownership of the Policy to the Trust, to change the beneficiaries under the Policy, and submitting a "statement of irrevocability." Dyroff's letter also informed NY Life through its agent that the Trustees and their lawyer did not have a copy of the Policy: "In addition, as we discussed, the current policy cannot be located, and we request that a new policy, naming the Herbert C. Wiegand Revocable Trust as owner, be issued and delivered to our office." The address of the office was shown as "Sixth Floor, 165 N. Meramce [sic] Avenue, St. Louis, MO 63105-3789."

Defendants acknowledged receipt of the 7/22/03 letter in return correspondence to attorney Dyroff and recorded the change in ownership on August 19, 2003.

On January 12, 2004, attorney Dyroff sent a letter to New York Life enclosing a "Service Form – Change Requests" document that was signed by the Trustees. While the Service Form – Change Requests document mentioned the change of address, the letter from attorney Dyroff did not. The change of address request omitted the then-current address of the Trust, i.e., 9 Huntleigh Woods. The new address of the Trust was listed as 165 N. Meramce (sic) Avenue, 6th Floor.

3

On February 17, 2004, Attorney Dyroff sent another letter to Defendants, advising the Policy incorrectly stated it was owned by Wiegand, rather than the Trust in his name. The February 17 letter made no mention of the January 12, 2004 request to change the Trust's mailing address.

In reply correspondence dated June 23, 2004, New York Life confirmed the owner of the policy was The Herbert C. Wiegand Revocable Trust. The listed mailing address on New York Life's June 23, 2004 correspondence remained 9 Huntleigh Woods. Neither Attorney Dyroff nor the Trustees responded to New York Life's June 23, 2004 correspondence or otherwise notified New York Life that it contained the old address. Edward Wiegand testified that he does not recall seeing the Exhibit 9 letter before Sprich's deposition was taken in this lawsuit. Trustee Sprich also did not see the June 23, 2004 letter before her deposition. Attorney Dyroff testified that she could not recall the letter or what she did in response. Attorney Dyroff made no further contact with New York Life on behalf of the Trust between June 23, 2004 and 2020.

Plaintiffs were obligated "to handle all affairs as outlined in the Trust." As Trustees, Plaintiffs were required to review and understand any documents necessary to effectuate the Trust's provisions.

4

New York Life offers policy holders multiple ways to receive up-to-date information about their policies beyond the annual notice, including by phone or online.

Plaintiffs did not know how the Policy functioned and took no steps to learn about the Policy from the Trust's attorney, Dyroff, or New York Life directly at any point between 2004 and 2020. Plaintiffs never requested an updated calculation of the policy's cash value from New York Life or tendered a request to New York Life to surrender the policy in exchange for its cash value before Walter's death in 2020.

New York Life sent annual correspondence regarding the status of the policy to the Huntleigh Woods address each June until 2011, which provided updates of the policy's remaining cash value, remaining premium, anticipated changes in the policy's value in the coming year, and estimated when the policy was likely to expire if no further premium payments were made. Annual Notices, 2003-2011, NYL 793-846.

On June 3, 2011, the Postal Service marked New York Life's annual Policy correspondence to the Huntleigh Woods address undeliverable. When New York Life's mail is returned undeliverable, New York Life follows a standard internal procedure to search for alternative contact information and if necessary, to cease sending private correspondence to addresses with unknown inhabitants. First, an

5

employee reviewed the file to see if the Policy holder submitted a recent change of address, i.e., submissions within a month of the undelivered correspondence.

In a letter from NY Life dated January 21, 2004, NY Life stated: On January 21, 2004 we received a request signed by Edward Wiegand and Eugenia Sprich as Co-Trustees to change the address to 165 N. Meramce Avenue, 6th Floor, St. Louis, MO 63105. Due to an oversight on our part, the address change was not processed as requested. We apologize for this error. NY Life's corporate representative, Elliott, testified at his deposition that the letter was sent by Dillard as part of her job, so that when she was writing it, she was writing for New York Life as its employee. Elliott testified that his review of NY Life's records for the Policy showed that the address change was in its files and had simply not been acted upon, notwithstanding that the address change was "in good order." "In good order" means that NY Life had all of necessary information to process the address change request. Elliott Depo. at 108-09. The address change request had been placed in NY Life's "Contract Change Folder," not the address change folder. The form with the address change included two separate requests — the request for the address change and the request for a duplicate copy of the Policy — and only the latter was processed.

Finding no change of address had been submitted in the preceding month, New York Life then searched Accurint, a background check and public records

6

search vendor. The Accurint search revealed no alternative contact information because the Policy was owned by the Trust rather than an individual. New York Life does not have the ability to search for the addresses of non-person entities such as trusts.

New York Life sent a follow-up letter to the Huntleigh Woods address advising of the prior failure of delivery on June 23, 2011 and requesting a phone call to confirm the Policy's contact information. The letter advised if New York Life received no reply within 120 days, it would send no further correspondence to the Huntleigh Woods address in order to protect private information regarding the Policy. New York Life received no response and sent a final letter to the Huntleigh Woods address on October 21, 2011 stating that it would not send any further correspondence unless an authorized policy holder confirmed the validity of the address. New York Life received no reply to the October 21, 2011 letter and sent no further correspondence to the Huntleigh Woods address until the Policy lapsed in 2016.

Although it had no active Policy address on file, New York Life continued generating annual reports and archived them in its file.

The premium Wiegand paid in 2000 was exhausted in 2016.

On June 13, 2016, New York Life sent a letter to the Huntleigh Woods

7

address stating that the policy would lapse if additional premium payments were not made.

New York Life sent two final notifications of lapse to the Huntleigh Woods address on July 13 and August 15, 2016.

New York Life kept the policy open for an additional two months under a grace period funded in part by the remaining cash value of the Policy until August 18, 2016, at which point the remaining value of the premium expired and coverage terminated.

Plaintiffs learned of Walters' death in November of 2020 and sent correspondence to New York Life regarding the Policy on November 19, 2020. In their November 19, 2020 letter, Plaintiffs (1) stated they were unaware the policy lapsed in 2016; (2) advised the Huntleigh Woods mailing address was incorrect; and (3) requested copies of the policy's statement and transaction history, notices and correspondence, and policy cash value over time.

In reply correspondence dated February 2, 2021, New York Life provided Plaintiffs with all annual notices from 2003-2016 and made an extracontractual offer to pay the cash surrender value of the policy at the time of its 2016 expiration: $25,095.26. Plaintiffs rejected New York Life's offer.

The first time either Trustee read the Policy was after Jean Walters died in 2021.

## Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.

The Eighth Circuit Court of Appeals has explained,

> "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)] (quotations omitted). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) (quotations omitted).

*Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047–48 (8th Cir. 2022). To put the "materiality" requirement slightly differently, " '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Rusness*, 31 F.4th at 614 (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

The parties bear specific burdens on a motion for summary judgment. "The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). Thus, "'[t]he movant bears the initial responsibility of informing the district court of the basis for its motion and must identify those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.'" *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1042).

The burden on the resisting party is as follows:

The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence

10

> of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015), quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).
>
> Similarly, if the movant has supported its motion for summary judgment, the party opposing summary judgment "may not simply rest on the hope of discrediting the movant's evidence at trial." *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 844 (8th Cir. 2007) ("*3234 Washington*"). Where the testimony of the movant's witnesses is critical, if the testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits," "then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might turn up at the trial." *Id*. at 845 (quotations omitted); *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). But summary judgment is improper where specific facts "even partially" undermine the witness's credibility in a material way. *3234 Washington*, 480 F.3d at 845.

*Erickson*, 31 F.4th at 1048. Thus, " '[t]o show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy.'" *Rusness*, 31 F.4th at 614 (quoting *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019)). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the

11

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## Discussion

Defendants argue they are entitled to judgment as a matter of law because the policy lapsed for lack of payment of the premiums.  Plaintiffs argue they sent a change of address form  to NY Life and thought nothing further had to be done, based on information they were provided by insurance agents.  Clearly, disputes as to material facts are present and it is incumbent on the tryer of fact to ascertain these facts in dispute. Judgment as a matter of law is not appropriate.

## Conclusion

Based upon the foregoing, Defendants are not entitled to judgment as a matter of law. The record before the Court establishes genuine disputes as to material facts exit.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 54] is **denied**.

Dated this 31st day of October, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE